| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| *versus* | § | CASE NO. 4:14-CR-73(5) |
| | § | |
| JUAN CARLOS PORTELA NORIEGA | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Juan Carlos Portela Noriega's ("Noriega") *pro se* Motion for Sentence Reduction (#388), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#392). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I. Background

On April 9, 2014, a federal grand jury in the Eastern District of Texas returned a four-count Indictment against Noriega and twelve codefendants, charging Noriega in Count 1 with Conspiracy to Possess With the Intent to Manufacture and Distribute 5 Kilograms or More of a Mixture or Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. § 846; in Count 2 with Conspiracy to Import Cocaine and to Manufacture and Distribute Cocaine Intending and Knowing the Cocaine Will Be Unlawfully Imported into the United States, in violation of 21 U.S.C. § 963; in Count 3 with Manufacturing and Distributing Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported into the United States, in violation

of 21 U.S.C. § 959 and 18 U.S.C. § 2; and in Count 4 with Conspiracy to Possess With the Intent to Distribute Cocaine While On Board a Vessel Subject to the Jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503 and 70506. On December 2, 2016, Noriega pleaded guilty to Count 1 of the Indictment pursuant to a non-binding plea agreement, and the court dismissed the remaining counts. Subsequently, on April 24, 2017, the court sentenced Noriega to 135 months' imprisonment, to be followed by a 2-year term of supervised release. Noriega was previously housed at Correctional Institution Reeves I & II ("CI Reeves"), located in Pecos, Texas. He is now housed, as of May 19, 2021, at Federal Correctional Institution Berlin ("FCI Berlin"), located in Berlin, New Hampshire. His projected release date is October 20, 2024.

## II.     Analysis

### A.     Exhaustion of Administrative Remedies

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>    (i) extraordinary and compelling reasons warrant such a reduction; or
>
>    (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the

offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he

3

exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Noriega, who was extradited from Colombia, submitted a request to the administrator of the facility where he is housed, dated September 30, 2020, seeking compassionate release due to COVID-19. On October 7, 2020, Facility Administrator LaVaughn Garnto ("Garnto") denied Noriega's request, noting that he had an active Immigration and Customs Enforcement ("ICE") detainer. Noriega submitted another request to the Facility Administrator, dated February 8, 2021, citing "extraordinary and compelling circumstances," his conditions of confinement, and the risks associated with COVID-19. Garnto again denied Noriega's request on

4

February 10, 2021. Although Noriega appears to have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*; *accord United States v. Keys*, ___ F.3d ___, No. 20-61192, 2021 WL 1732282, at *1 (5th Cir. Apr. 30, 2021); *United States v. Cooper*, ___ F.3d ___, No. 20-20485, 2021 WL 1661493, at *3 (5th Cir. Apr. 28, 2021).

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Shkambi*, 993 F.3d at 391. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *Id*. at 392. Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). At present, the Commission has only one voting member.

(upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

B.  Medical Condition

In the instant motion, Noriega, age 44, contends that he is eligible for compassionate release due to his medical condition, claiming that his unspecified "health conditions in combination make him more vulnerable to serious complications from COVID-19." Nevertheless, Noriega does not mention any underlying medical problems, much less any conditions that would make him a high risk of contracting COVID-19 or of suffering severe symptoms if he became afflicted with the virus.[4] Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

---

[4] In relevant part, the Centers for Disease Control and Prevention ("CDC") states that adults with cancer, chronic kidney disease, chronic lung diseases (including COPD, asthma, interstitial lung disease, cystic fibrosis, and pulmonary hypertension), dementia or other neurological conditions, diabetes (Type 1 or Type 2), Down syndrome, heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state, liver disease, overweight or obese, sickle cell disease or thalassemia, smoking (current or former), solid organ or blood stem cell transplant, stroke or cerebrovascular disease, or substance use disorders can be more likely to become severely ill from COVID-19.

When interviewed in connection with his Presentence Investigation Report ("PSR"), prepared on February 21, 2017, and revised on March 24, 2017, Noriega reported no current health concerns and that he was not prescribed any medications. Nonetheless, he indicated that in a previous altercation with Colombian guerillas, he was shot in his right jaw, in the right hand, under his right biceps, on his right side, and above his right knee. He also stated that he had a grenade thrown at him, which caused injuries to his left biceps and right pectoral muscle. Noriega informed Probation that, as a result of these incidents, he had part of his colon and half of his liver removed. He further stated that he was unable to digest food properly, has one leg that is longer than the other, cannot stand for prolonged periods, and has no mobility in his right hand.

According to Noriega's current BOP medical records, within the past year, he has complained of a fungus under his toe nail, intermittent diarrhea, unspecified pain in his ears and throat, and chronic pain stemming from his uneven legs. Although he is not presently prescribed any medication, during the past year, he has been prescribed methylprednisolone sodium succinate (anti-inflamatory), amoxicillin (antibiotic), loperamide (anti-diarrheal), ceftriaxone (antibiotic), miconazole nitrate (anti-fungal cream), ibuprofen (inflamation), and claritin (allergies). Noriega's medical records further indicate that he has not been diagnosed with high blood pressure[5], heart

---

[5] Noriega's most recent blood pressure readings, 122/84 on February 26, 2021, and 126/82 on February 16, 2021, reflect that his blood pressure is elevated but he does not have high blood pressure. According to the American Heart Association, a systolic reading (upper number) of less than 120 and a diastolic reading (lower number) of less than 80 is categorized as normal; a systolic reading between 120 and 129 and a diastolic reading less than 80 is categorized as elevated; and a systolic reading of 130 or above and a diastolic reading over 80 is categorized as high blood pressure.

8

problems, diabetes, liver disease, asthma, hyperlipidemia [6], or kidney disease. A physical examination performed on April 27, 2020, characterized Noriega as overweight; however, the physical also revealed that Noriega weighed 140 pounds and his body mass index ("BMI") was 24, which, according to the CDC, indicates a normal weight.[7]

Moreover, Noriega is classified as a BOP medical Care Level 1 inmate. According to BOP's Clinical Guidance, dated May 2019, "Care Level 1 inmates are less than 70 years of age and are generally healthy," but "[t]hey may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months." Indeed, none of Noriega's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, Noriega's conditions are well managed with medication, when required. *See id.* In this instance, Noriega's BOP records reveal that he is housed in general population, has no medical restrictions, has regular duty work assignments, and is cleared for food service. Thus, Noriega has failed to establish the existence of any medical conditions that would constitute extraordinary and compelling reasons to reduce his sentence.

---

[6] Although a laboratory report dated May 7, 2020, showed that his LDL cholesterol was slightly elevated at 118 mg/dL, his total cholesterol level was normal. According to the National Institutes of Health, an LDL cholesterol reading of less than 100 mg/dL is optimal, a reading of 110 to 129 mg/dL is near optimal/above optimal, a reading of 130 to 159 mg/dL is borderline high, a reading of 160 to 189 mg/dL is high, and a reading of 190 mg/dL and above is very high.

[7] According to his PSR, Noriega is 5 feet, 4 inches tall and, as of April 27, 2020, weighed 140 pounds, giving him a BMI of 24. According to the CDC, a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

C.  COVID-19

Noriega expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of May 19, 2021, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 839) and 4 staff members at FCI Berlin as having confirmed positive cases of COVID-19, 195 inmates and 16 staff members who have recovered, and 0 inmates who succumbed to the disease. Thus, it appears that the facility where Noriega is housed is handling the outbreak appropriately and providing adequate medical care.

Although Noriega expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Noriega, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F.

Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Noriega argues that the COVID-19 outbreak and the "lock-down measures" taken within his facility constitute extraordinary and compelling reasons justifying early release from prison. Noriega fails to recognize, however, that COVID-19 has disrupted everyone's daily routines, both in and outside of prison. According to the BOP's website, the "BOP recognizes the importance for inmates to maintain relationships with friends and family. During modified operations in response to COVID-19, the BOP suspended social visitation, however, inmates were afforded 500 (vs. 300) telephone minutes per month at no charge to help compensate for the suspension of social visits." Furthermore, in an attempt to keep inmates and staff safe, the BOP has modified its operations to allow "Institutions with active COVID-19 cases [to] make exceptions to [] programming requirements for the safety of inmates and staff." Additionally, the BOP's website notes that "inmates are limited in their movements to prevent congregate gathering and maximize social distancing;" however, "inmate movement in small numbers is authorized for the following

11

purposes: commissary, laundry, showers three times each week, and telephone." *See United States v. Dodge*, No. CR 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person."); *see also United States v. Wright*, No. 17-CR-0301, 2020 WL 7334412, at *5 (D. Minn. Dec. 14, 2020) ("It is undisputed that the BOP has implemented numerous measures to prevent and mitigate COVID-19 outbreaks within its facilities."). The safety measures that have been implemented benefit Noriega, other inmates, and BOP staff members during the pandemic. The consequential inconveniences presented by the BOP's modified operations on Noriega's daily activities do not create an extraordinary and compelling reason to reduce his sentence.

Moreover, it is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in severe criminal conduct, the district court has the discretion to deny compassionate release after weighing the various factors. *Id.* at 693-94; *accord Keys*, 2021 WL 1732282, at *1 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal."). In exercising its discretion, the court finds that Noriega has failed to establish that his medical condition or other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

D. <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Keys*, 2021 WL 1732282, at *1; *Shkambi,* 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. Noriega's offense of conviction entails his participation in an international drug-trafficking conspiracy involving the distribution of 450 kilograms or more of cocaine. As part of the conspiracy, Noriega distributed multi-kilogram quantities of cocaine for a large-scale drug trafficking organization based in Colombia that was affiliated with the Los Zetas drug cartel in Mexico. He delivered cocaine, stored drugs, guarded cocaine while being transported, and received drug proceeds. Noriega was a member of a paramilitary group that controlled areas of Colombia and extracted payments from others involved in the drug trade by collecting "taxes" on drug proceeds to allow safe passage through the area. According to his PSR, Noriega was described as a "very dangerous individual in Colombia."

Probation reports that Noriega has no legal status in the United States, has an active ICE detainer, and is subject to deportation upon his release from imprisonment. Moreover, while in BOP custody, Noriega has received a disciplinary citation for being in an unauthorized area. In view of the nature and circumstances of his offense of conviction, the large quantities of cocaine involved, his lack of legal status, his affiliation with a drug cartel and a paramilitary group of extortionists in Colombia, and his disciplinary infraction, the court cannot conclude that Noriega's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Noriega compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Noriega after he has served only 72 months (or approximately 62%) of his 135-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Noriega's track record is similarly

14

a poor one. In this instance, there is no reason to believe that Noriega would not revert to drug-trafficking and other criminal activities if released from prison at this time.

III. Conclusion

In sum, Noriega has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Noriega's *pro se* Motion for Sentence Reduction (#388) is DENIED.

SIGNED at Beaumont, Texas, this 21st day of May, 2021.

_Marcia A. Crone_
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE